Argued September 16, 1959, reversed and remanded May 18,
petition for rehearing denied July 6, 1960

# PORTLAND TRACTION COMPANY *v.* HILL, PUBLIC UTILITY COMMISSIONER

352 P. 2d 552
353 P. 2d 838

*Grant T. Anderson,* Portland, argued the cause for appellant. With him on the brief were King, Miller, Anderson, Nash & Yerke and Thomas E. Withycombe, Portland.

*Robert R. Hollis,* Special Assistant Attorney General, Portland, argued the cause for the respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before ROSSMAN, J., presiding, and LUSK,* WARNER, PERRY, SLOAN, O'CONNELL and KING, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Portland Traction Company, from an order of the circuit court which dismissed, upon the motion of the defendant, the plaintiff's suit. The plaintiff, to which we will refer as the Company, owns and operates two short lines of railroad in this state which, until January 25, 1958, offered freight and passenger services out of Portland. The defendant is the Public Utility Commissioner of Oregon. The suit which was filed April 25, 1958, and which conformed with ORS 756.580 through 756.610 sought a decree setting aside an order issued by the Commissioner January 25, 1958, bearing No. 35782. The order required the Company to maintain its passenger service in the manner specified in orders issued by the Commissioner bearing Nos. 34218 and 35219. The Company, by instituting this suit, challenged Order No. 35782 and its auxiliaries (Nos. 34218 and 35219) as unreasonable and confiscatory.

The complaint in this suit alleged that in recent years the Company operated its passenger services

---

* Resigned March 15, 1960.

at a heavy financial loss and that due to lack of demand for its passenger service it was impossible to make the service yield sufficient revenue to pay the cost of operation. After the Commissioner had filed an answer (November 17, 1958) which averred that Order No. 35782 was reasonable and not confiscatory, testimony was taken. At its close the circuit court on December 15, 1958, pursuant to ORS 756.600 (1), remanded the matter to the Commissioner. ORS 756.600 (2) provides that when a cause, such as this one, has been remanded to the Commissioner he "may alter, modify, amend or rescind his order." It also says in subsection (3) that "If the Commissioner rescinds his order complained of, the suit shall be dismissed." December 26, 1958, the Commissioner entered Order No. 36459 which, after referring to Orders No. 34218, 35219 and 35782, ruled that they "are rescinded effective this date." Thereupon, the circuit court entered its order, challenged by this appeal, which dismissed the suit. The controlling issues submitted by this appeal are whether the Commissioner's order of December 26, 1958, bearing No. 36459, constituted a rescission of Order No. 35782 within the contemplation of ORS 756.600, and if so, whether the Company was thereby afforded due process of law. If Order No. 36459 did not rescind Order No. 35782 as the word rescind is employed in ORS 756.600 (2) and (3), the circuit court was not justified by that section of our laws in dismissing this suit.

The aforementioned sections of our laws are quoted at length in *Morgan v. Portland Traction Co.*, 222 Or 614, 331 P2d 344. That opinion mentions some facts in addition to those set out above.

The Company instituted this suit, as we have said, for the purpose of securing a decree holding invalid

Order No. 35782 and its two subsidiary orders (Nos. 34218 and 35219). Order No. 35219, which is expressly reaffirmed by Order No. 35782, declares:

"Ordered that Portland Traction Company * * * is hereby notified that appropriate action will be taken against it to collect the maximum penalties up to $10,000 for each offense as provided for in ORS 760.035 in the manner provided in ORS 760.025 * * *."

The grave consequences threatened by that order, as well as by actions for treble damages (ORS 760.020) which individuals may file, indicate the importance of the suit now before us.

*Morgan v. Portland Traction Co.,* supra, is cited as the basis for an argument that unless the Company can maintain this suit and secure in it a decree holding invalid Orders No. 35782, 35219 and 34218, it can not plead the invalidity of any of those orders in any action based upon them which may be instituted (1) "to collect the maximum penalties up to $10,000 for each offense" or (2) to collect damages or treble damages (ORS 760.020) sought by individuals.

Order No. 34218 was issued February 17, 1956, when the office of Commissioner was held by the Honorable Charles H. Heltzel. Order No. 35219 and all of the other orders to which this opinion refers were issued when the office was held by the Honorable Howard Morgan. Order No. 35219 was issued March 18, 1957.

Prior to the issuance of Order No. 34218 the Company had sought from the Commissioner authority to discontinue its passenger service. After a hearing conducted by the Commissioner Order No. 34218 was issued which directed the Company to continue its passenger service in compliance with the augmented

schedules set forth in the order. Shortly thereafter the Company lost, through action of the city council of the city of Portland and the board of county commissioners of Multnomah County, about 1½ miles of tracks which crossed the Willamette River upon the Hawthorne Bridge and led to the Company's station in the downtown district of Portland. Upon that crisis the Company could no longer run its cars into the downtown part of the city and thereupon the number of passengers which it carried declined drastically. March 18, 1957, the Commissioner issued Order No. 35219 which directed the Company to institute a shuttle bus service between the new end of its line on the east side of the Willamette River and its station in downtown Portland and maintain its service in accordance with the schedules set forth in Order No. 34218. The shuttle bus service was instituted October 21, 1957. November 25, 1957, the plaintiff gave notice that its losses in the maintenance of the service were mounting and that it would discontinue its passenger service December 15, 1957. A Commissioner's order dated December 3, 1957, and bearing No. 35581, directed the plaintiff to withdraw its notice of intention to abandon its passenger service and to maintain the service as theretofore. January 25, 1958, the Commissioner issued the order which is the specific subject matter of attack in this suit, that is, Order No. 35782 which directed the plaintiff to continue its passenger service in accordance with Orders No. 34218 and No. 35219. On the same day the Company discontinued its passenger service.

January 28, 1958, the circuit court for Multnomah County issued a peremptory writ of mandamus commanding the Company to comply with the Commissioner's aforementioned orders. The outcome of that

case yielded the opinion which we have already cited, *Morgan v. Portland Traction Company*. It held that since the company had not secured a decree in a case instituted pursuant to ORS 756.580 through 756.610, holding that Order No. 35782 was invalid, the defense of invalidity could not be presented in the mandamus proceeding.

April 25, 1958, three months after the Company had discontinued its passenger service, it filed the complaint which instituted this suit. The complaint attacks Order No. 35782, together with Orders No. 34218 and No. 35219, largely upon the ground that the demands for passenger service upon the Company's lines had diminished to such a low ebb that it was impossible to secure sufficient revenue from the service to discharge the cost of maintaining it. The complaint avers in mathematical tables the heavy declines in passenger patronage which the Company had suffered in recent years. It also averred in terms of dollars the financial losses which the maintenance of the passenger service had thrust upon the Company.

ORS 756.590 provides:

"After the commencement of a suit under ORS 756.580, the circuit court may, for cause shown, upon application to the circuit court or presiding judge thereof, and upon notice to the commissioner and hearing, suspend or stay the operation of the order of the commissioner complained of until the final disposition of such suit, upon the giving of such bond or other security, or upon such conditions as the court may require. Such bond shall be executed in favor of the commissioner for the benefit of whom it may concern and may be enforceable by the commissioner, or any person interested, in an appropriate proceeding."

The Company did not at the time this suit was instituted seek a stay of Order No. 35782, but November 10, 1958, the circuit court, upon the Company's application, stayed the operation of that order. The court's order read in part as follows:

"Ordered That order No. 35782 issued by defendant under date of January 25, 1958, be, and the same hereby is, suspended, and the operation thereof stayed, until the final disposition of the above-entitled suit."

After the Commissioner had filed his answer on November 17, 1958, which sought to sustain Order No. 35782 as reasonable and valid a trial of the issues before the circuit court occurred December 4 and 5, 1958. The trial developed evidence of the kind to which ORS 756.600 (1) refers in this vein: "different from that offered upon the hearing before the commissioner or additional thereto." Thereupon, the circuit court remanded the cause to the Commissioner in compliance with ORS 756.600 (1).

December 26, 1958, the Commissioner entered Order No. 36459 which reads:

"Ordered that P.U.C. Oregon Orders No. 34218, 35219 and 35782, together with all orders necessarily subsidiary and ancillary thereto, relating to the rendition of inter-urban passenger service by Portland Traction Company are rescinded effective this date."

Following the entry of that order both the Company and the Commissioner moved for relief. The Company moved for a decree in its favor on the ground that Order No. 36459 left the provision of Order No. 35782 in effect during the period of January 25, 1958, to December 26, 1958. It will be recalled that on

January 25, 1958, (1) the Commissioner issued Order No. 35782 and (2) the Company discontinued its passenger service. The order of December 26, 1958, just quoted "rescinded effective this date" Orders No. 34218, 35219 and 35782. The Company contended that Order No. 36459 suspended the operation of Order No. 35782 and its two predecessors only after December 26, 1958. According to it, Order No. 36459 "does not amount to a rescission of said Order No. 35782 within the meaning of ORS 756.600." The Commissioner moved for an order dismissing the suit upon the ground that although Order No. 36459 operates prospectively it nevertheless constitutes a rescission within the contemplation of ORS 756.600 which reads:

"If the Commissioner rescinds his order complained of, the suit shall be dismissed. If he alters, modifies or amends his order, findings of fact or conclusions of law, such altered, modified or amended order, findings of fact or conclusions of law shall take the place of the original, and the judgment or decree shall be rendered in the suit as though the order, findings of fact or conclusions of law as so changed had been made in the first instance. * * *"

The defendant's motion was sustained.

*Morgan v. Portland Traction Company,* supra, shows the practical operation of ORS 756.580 through 756.610 which may be termed the Commissioner's Practice Act. The decision holds that the act is the exclusive means whereby a party to a proceeding before the Commissioner may obtain a judicial review of an order entered by the Commissioner. Unless the party avails himself of the remedy afforded by the act the Commissioner's order is deemed valid as to him and he has no other opportunity of challenging it.

The circuit court's order which is challenged by this appeal did not pass upon the merits of this suit nor upon the validity of any of the Commissioner's orders. The decision in the mandamus proceeding (*Morgan v. Portland Traction Company,* supra) held that the defense of invalidity could not be considered in that proceeding because the Company had not availed itself of the procedure afforded by the Commissioner's Practice Act (ORS 756.580 through 756.610). The suit now before us was instituted pursuant to the very act just cited to test the validity of the orders aforementioned (Nos. 34218, 35219 and 35782).

We expressed the belief in a preceding paragraph of this opinion that the outcome of this appeal is dependent in part upon whether or not Order No. 36459 (December 26, 1958) which "rescinded effective this date" Orders Nos. 34218, 35219 and 35782 employed the verb "rescinded" in the manner in which it is used in ORS 756.600. That section of our laws is rendered applicable to railroads by ORS 760.590.

The Commissioner argues that notwithstanding the fact that he couched Order No. 36459 in such terms that it would operate prospectively only ("rescinded effective this date") it nevertheless constitutes a rescission of Orders Nos. 34218, 35219 and 35782, and that, therefore, the circuit court was required by ORS 756.600 (3) to dismiss this suit. If that interpretation of the word "rescind" is adopted, and we, thereupon, affirm the order of the circuit court which dismissed this suit, the Company will have no means whatever of obtaining an adjudication of the alleged invalidity of the three above mentioned orders unless we depart from the holding in *Morgan v. Portland Traction Company,* supra. If the Company can not secure in this

suit an adjudication as to the validity of those orders, and proceedings are later filed against it to recover penalties or damages for its violation of any of those orders during the period of January 25, 1958 (when Order No. 35782 was entered) to December 26, 1958 (when the so-called rescission occurred), the court in those proceedings will be compelled to treat all three orders as valid. Even more to the point is the fact that if this suit was properly dismissed the Company will have no means of challenging the validity of those three orders in any action brought against it based upon events that occurred in the period of November 10, 1958 (when the stay order was granted) to December 26, 1958. Thereby one would behold that bizarre outcome of this suit and the resulting inability of the Company to challenge the validity of those three orders notwithstanding the fact that it instituted this suit under the Commissioner's Practice Act (ORS 756.580 through 756.610) and embraced in full all of the features of that act, including the stay feature in the period of November 10, 1958, through December 26, 1958. If that irregular outcome must be brought about, the purpose of the act and the objectives of the present suit would have been defeated merely because the Commissioner entered his order "rescinded effective this date" thereby leaving the Company subject to all liabilities that may have been incurred prior to "this date" with no means of showing that the purported liabilities were based upon invalid orders.

The foregoing discloses that there are two periods of time that are pertinent to the issues of this case. The first period began January 25, 1958, when the Commissioner entered Order No. 35782, and extended to November 10, 1958, when the circuit court entered its order (quoted in a preceding paragraph) which

stayed the operation of Order No. 35782. The stay order was entered pursuant to ORS 756.590. The second period began November 10, 1958, when the court's stay order was entered, and ended December 26, 1958, when the Commissioner "rescinded effective this date" Order No. 35782 and its two preceding auxiliary orders.

ORS 756.600 (3) authorized the circuit court to dismiss suits such as this only in the event that the Commissioner, upon the remand to him of the proceeding "rescinds his order." Therefore, brushing aside constitutional issues, the question is: Did the Commissioner rescind Order No. 35782 when, on December 26, 1958, he entered his order which, in referring to it (and its two ancillary orders), stated that they "are rescinded effective this date." Obviously, the Commissioner may use the word "rescind" in any manner that he chooses, but it is our duty to determine in the present instance whether the order which he entered constituted a rescission within the contemplation of ORS 756.600 (3). That section of our laws authorizes the Commissioner, upon the remand by the circuit court to him of a pending proceeding, to "alter," "amend," "modify" or "rescind" his order. If the Commissioner, upon the remand to him of a proceeding, actually rescinds his order although he does not employ the word "rescind" at all, still, it would be the circuit court's duty to dismiss the suit upon finding that the Commissioner had actually rescinded his order. Upon the other hand, if the Commissioner, upon a remand, employs the term "rescind" several times but goes no further than to modify or alter his order, the court could not dismiss the suit.

■ Accordingly, we must determine the meaning of the word "rescinds" as it is employed in ORS 756.600

(3). Resort to the dictionary is not needed to determine that the word "rescinds" when used in a statute such as ORS 756.600 (3) is far more sweeping in its effect that the words "alters," "modifies" or "amends." "Rescinds" when employed in the context of ORS 756.600 means to uproot completely. The words "alters," "modifies" and "amends," unlike the word "rescind," denote that life and vitality are left in the instrument that is altered, modified or amended.

■ It is our belief that the word "rescinds" as used in ORS 756.600 means rescission in toto, that is, from the beginning. If that was not the meaning that ORS 756.600 intended, the statute surely would not have provided for a dismissal of the review proceeding. We noted in preceding paragraphs that if the so-called rescission is limited to the future and if Order No. 35782 was kept intact and alive as to everything that occurred in the past, actions against the Company can be predicated upon the order by the state and any person who feels he was damaged through the Company's disregard of the order in the period of January 25 to December 26, 1958. That very fact shows that the order was not rescinded—certainly not completely rescinded. Therefore, "rescind" would not be the word listed in ORS 756.600 that would denote the action taken by the Commissioner when he entered Order No. 36459. Rather, the word that would denote the action thus taken would be one of the others found in that section such as "alters," "modifies" or "amends." It surely could not have been the legislature's intention that a railroad could be induced to institute a suit under the Commissioner's Practice Act and file an expensive stay bond under a promise that the Company would thereby obtain a judicial determination of the validity of the Commissioner's order but meet

with the bizarre result of having its suit dismissed and its hopes defeated by the simple act of the Commissioner in entering an order reciting "rescinded effective this date." If such is the plight into which the Company could be cast it would find that instead of improving its condition by filing the suit and the undertaking both it and its surety could be sued upon liabilities which it could not even question. Rather than adopt such a view of the possibilities of the Commissioner's Practice Act, we would be tempted to hold that the act does not constitute the exclusive means of judicial review. We believe that ORS 756.600 contemplates that rescission of an order by the Commissioner must be so complete that it leaves nothing undetermined that could continue to imperal the Company.

If a so-called rescission could leave an order in effect up to the date of the so-called rescission, then to deny to a suitor the right to secure an adjudication as to the validity of the order would be contrary to the intention of the legislature, according to our belief. It would also impinge upon constitutional safeguards if it developed that the suitor was barred from all other courts from which he might otherwise obtain protection of his constitutional rights.

That the Commissioner intended his Order No. 36459 should operate prospectively only is clear not merely from the express provision that it should be effective from the day on which it was made, but also from recitals in the order which we will not quote. We believe that the Commissioner consciously and in good faith intended that Order No. 35782 should be deemed effective up to the time that he rescinded it. The Commissioner clearly had the right to so state in his order, but by doing so he could not cut off the

Company's right to challenge the validity of Order No. 35782, and we do not attribute to him any purpose of that nature. Up to the time of the submission of this case to this court the merits of the controversy have never been presented to any court.

Rather than find a constitutional defect in the statute, we construe Order No. 36459 not as a rescission of Order No. 35782 but as an alteration or modification of it. Therefore, the circuit court was not authorized to dismiss this suit.

A similar question arose in *Gulf, C. & S.F. Ry. Co. v. American Sugar Refining Co.*, 130 SW2d 1030 (Tex Civ App). The Railroad Commission of Texas issued a rate order fixing maximum rates on shipments of sugar between certain designated points. The railroad company instituted a review proceeding pursuant to statute. The lower court held the rates valid, but the decision was reversed by the court of civil appeals and the supreme court affirmed the latter court. For a period of time after the commission's order became effective the railroad applied the rates prescribed by a former order. Then it applied the new rates, but under protest and with a published notice that it was contesting the validity of the order in the courts and if the contested rates were held invalid it intended to collect the undercharges. After the supreme court of Texas had declared the rates invalid the American Sugar Refining Company sued the railroad to collect alleged overcharges paid by it on shipments of sugar before the railroad applied the contested rates. The railroad counterclaimed for undercharges after it put the contested rates into effect. The court ruled that the sugar company take nothing by its action and gave the railroad judgment on its counterclaim.

The sugar company based its right to recover on Art 6452, Vernon's Ann Civ Stat, which read:

> "In all actions between private parties and railway companies brought under this law, the rates, charges, orders, rules, regulations and classifications prescribed by the Commission before the institution of such actions shall be held conclusive, and deemed and accepted to be reasonable, fair, and just, and in such respects shall not be controverted therein until finally found otherwise in a direct action brought for the purpose in the manner prescribed by the two succeeding articles."

As stated in the opinion, the argument of the sugar company was that the statute made the contested rates conclusive until they were set aside by the final judgment of the courts, and "that until such judgment became final the rates prescribed * * * were the only legal rates which the railroad could lawfully charge and collect from [the sugar company]."

This argument is similar to that made here on behalf of the Commissioner, though it does not go so far. The Commissioner says that the validity of the order here in question can never be determined by the courts.

The Texas court rejected the contention of the sugar company. It construed the statute as "procedural;" it said that its purpose was to prevent collateral attacks upon an order or rate of the commission and that if the section were otherwise construed a grave question as to its constitutionality would be raised. We quote from the opinion:

> "If Art. 6452 should be construed as contended for by appellee, a grave question as to its constitutionality is raised. It is essential, particularly

where a rate is attacked as being confiscatory, that an appeal to the court from the order of the Commission fixing the attacked rate be allowed in order to meet the requirements of the due process clauses of both the State and the Federal Constitutions. Fourteenth Amendment U. S. Constitution, U.S.C.A. and Sec. 19 of Art. 1 of Tex. Constitution, Vernon's Ann. St. Article 6452 makes no attempt to except confiscatory rates from its operation. The appeal allowed by Art. 6453 would not afford full relief, if the railroads are bound by the rates which have been successfully attacked in the method prescribed by statute pending the time required for the court to determine their invalidity. Appellee's construction of the statute necessarily means that even though Circular No. 7529 was subsequently annulled by the court order, the railroad would nevertheless be liable to it for the difference between the amount collected under the legal rates prescribed in Circular No. 7193 and the illegal rates prescribed in Circular No. 7529. By the same reasoning, the railroad could be held liable for the statutory penalties, if it failed to apply the illegal rates pending the appeal and the final judgment annulling the rates. * * *" 130 SW2d at 1033.

A similar view of the Texas statute was taken in *Mercantile Trust Co. v. Texas & P. Railway Co.*, C. C., 51 F 529, 542. This case went to the Supreme Court of the United States *sub nom Reagan v. Farmers' Loan & Trust Co.*, 154 US 362, 14 S Ct 1047, 38 L Ed 1014. The Supreme Court assumed that the statute would be unconstitutional if the railroad would be compelled to comply with a confiscatory rate order without opportunity to challenge its validity, but since the statute was severable the court was not required to strike it down.

We think that it is clear that if the Company can not obtain in this proceeding, instituted by it under the

provisions of the Commissioner's Practice Act (ORS 756.580 through 756.610), a ruling as to whether or not Order No. 35782 is confiscatory it would be our duty to hold the act invalid. But we prefer to deem Order No. 36459 as not effecting a rescission of No. 35782 and as therefore not requiring a dismissal of this suit. Such is our holding.

Since the circuit court should not have dismissed this suit it should have gone on and considered the validity of the Commissioner's three orders which we have already mentioned, that is, Orders No. 34218, 35219 and 35782. The validity of those orders has never been considered by any court. Our court is one of review and we can not consider the validity of the three aforementioned orders when that matter has never had the attention of any court. We, therefore, not only reverse the challenged order of the circuit court but also remand the cause to the circuit court.

ON RESPONDENT'S PETITION FOR A REHEARING

Robert Y. Thornton, Attorney General of Oregon, and Lloyd G. Hammell and Peter S. Herman, Assistant Attorneys General, Salem, for petition.

King, Miller, Anderson, Nash & Yerke and Thomas E. Withycombe, Portland, contra.

Before ROSSMAN, J., presiding, and WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

ROSSMAN, J.

The Petition for a Rehearing submitted by the Commissioner states:

"The State believes the Court's opinion has raised a fundamental issue, not resolved by the

opinion, of importance to the people of this State. The issue is contained in the following language of the Court's opinion at page 7 thereof:

"'* * * If the Company can not secure in this suit an adjudication as to the validity of those orders, and proceedings are later filed against it to recover *penalties* * * * for its violation of any of those orders during the period of January 25, 1958 (when Order No. 35782 was entered) to December 26, 1958 (when the so-called rescission occurred), the court in those proceedings will be compelled to treat all three orders as valid * * *.' (Emphasis supplied)

"As so couched this language of the Court opens the door to the contention that if the Circuit Court adjudicates that an order of the Commissioner is erroneous, then the Plaintiff Traction Company has a complete defense to any action brought subsequent to such adjudication by the Commissioner to impose statutory penalties for noncompliance with his order. * * *'"

The Commissioner has misconstrued our decision. We have made no ruling or intimation as to the rules applicable to any actions which may be brought against the Company for its noncompliance with any order issued by the Commissioner and based upon the Company's conduct in the period of January 25, 1958, when Order No. 35782 was entered, to November 10, 1958, when the stay order went into effect. The results of the Company's noncompliance with Order No. 35782 in that period remain for determination in any future action that may be instituted.

The petition for a rehearing is denied.